UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:16-CV-515-SPM |
| | ) | |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Nancy A. Berryhil, the Acting Commissioner of Social Security, denying the

application of Plaintiff Andrew Smith ("Plaintiff") for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties

consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

(Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I

will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. FACTUAL BACKGROUND

## A. Plaintiff's Testimony Before the ALJ

Plaintiff was thirty-five years old when he applied for DIB. (Tr. 31, 55). He has an eleventh grade education and previous work experience as a repair technician, carpenter, and assembly line worker. (Tr. 31-32). He testified that he is unable to work because of constant pain, occurring ninety percent in his lower back, and ten percent in his neck. (Tr. 32). Plaintiff has sought treatment for his pain including injections, nerve blocks, epidurals, and other procedures, and he had a TENS unit implanted on his spine for a one-week trial. (Tr. 32-33). His doctors have not recommended surgery to remove his disc because they say Plaintiff's condition is "not bad enough that we want to remove the disc." (Tr. 33).

Plaintiff testified that his daily activities include getting his son ready for school and walking him about 100 yards to the bus stop, and doing household chores such as folding laundry and loading the dishwasher. (Tr. 35-38). He will sometimes ride his son's bicycle home from the bus stop. (Tr. 36). He can sit for about thirty minutes and can stand for about forty-five minutes to one hour, and he frequently changes positions. (Tr. 36-37). Plaintiff can drive a car for about thirty minutes before needing to stop to change positions. (Tr. 36). He goes grocery shopping, but his girlfriend lifts the heavy items. (Tr. 38). Plaintiff can lift eight to ten pounds a few times if he does not twist while lifting. (Tr. 41).

On bad days, Plaintiff can hardly move, twist or bend, and he lies down most of the day. (Tr. 34). He experiences trouble sleeping, stating he gets three or four hours of sleep per night. (Tr. 34). He takes Trazadone as a sleep aid, and he takes two naps of forty-five minutes each during the day. (Tr. 35). Plaintiff takes Gabapentin and Percocet for pain, and also places ice

packs on his back for fifteen to twenty minutes, three to four times per day for pain relief. (Tr. 39).

On a scale from one to ten, Plaintiff experiences pain on a constant basis at a level of five to seven out of ten. (Tr. 39). Treating doctors have not recommended any type of assistive devices for walking, such as a cane or a walker, nor has Plaintiff tried any such device. (Tr. 40). Plaintiff tried going to physical therapy, but his doctor terminated it because it seemed to make his condition worse. (Tr. 40).

### B. Plaintiff's Medical Records

Plaintiff's medical records show that he has been receiving treatment for back pain since at least 2010, including a surgery in May of that year to relieve nerve compression at L4-L5. (Tr. 207). Plaintiff was referred to Dr. Suresh Krishnan for pain management and visited him regularly beginning in February of 2012. (Tr. 231). Dr. Krishnan's notes during the alleged disability period indicate that Plaintiff regularly complained to Dr. Krishnan of moderate to severe pain in his back and neck, often with radiation to the arms and legs (Tr. 221-22, 225-26, 299-300, 336-38, 340-41, 344, 347-48, 351-52,); was assessed as having conditions including back pain likely due to degenerative disc disease, post-laminectomy syndrome lumbar region, and radiculopathy likely related to bulging disk (Tr. 225, 229, 302, 339, 343, 346, 350, 354); and was treated with medications including Percocet, Neurontin, and tramadol. (Tr. 225, 230, 302, 339, 343-44, 346, 350, 354). Plaintiff's findings on objective examination were mixed, with regular findings of positive straight leg raise tests and decreased range of motion in the lumbar and cervical spine, but also regular findings of normal gait, normal sensation, normal reflexes, normal motor strength, ability to heel and toe walk, and no atrophy. (Tr. 223-24, 228-29, 302, 338, 342-43, 345-46, 349-50, 353).

Plaintiff's treating physician often described Plaintiff's pain as "disabling" (Tr. 239, 247, 256, 265, 269, 278, 283, 287), but he did not offer any opinions about Plaintiff's functional limitations. The record contains an opinion from a non-examining state agency physician, Q. Michael Ditmore, M.D., who reviewed Plaintiff's records in April 2013. (Tr. 50-54). Dr. Ditmore found that Plaintiff had a severe impairment of "disorders of back—discogenic and degenerative" but did not meet Listing 1.04A. (Tr. 50). He found Plaintiff's reported symptoms "partially credible" and found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit for a total of about six hours in an eight-hour workday; could stand and/or walk for about six hours in an eight-hour workday; could climb ramps, stairs, ladders, ropes, and scaffolds only occasionally; could stoop occasionally; could balance, crouch, and crawl frequently; and had no manipulative, visual, communicative, or environmental limitations. (Tr. 51-52).

## II.    PROCEDURAL BACKGROUND

On March 4, 2013, Plaintiff applied for DIB, alleging that he had been unable to work since January 10, 2013 due to disorders of the back. (Tr. 55). His application was initially denied. (Tr. 58). On May 3, 2013 Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 65-66). After a hearing, the ALJ issued an unfavorable decision on October 24, 2014. (Tr. 11-18). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, and the Appeals Council denied the request for review on February 19, 2016. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of

the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since January 10, 2013, the alleged onset date; that Plaintiff had the severe impairments of "disorder of the neck" and "disorder of the back"; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff required a sit/stand option allowing him to sit or stand alternatively at will, provided that he would not be off-task more than ten percent of the workday; that Plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds; that Plaintiff could occasionally stoop, kneel, crouch, and crawl; that Plaintiff must avoid all use of hazardous machinery and all exposure to unprotected heights; and that Plaintiff was limited to simple work, defined in the *Dictionary of Occupational Titles* as specific vocational preparation levels one and two, routine and repetitive tasks. (Tr. 14). The ALJ considered the physical and mental demands of Plaintiff's past relevant work, Plaintiff's RFC, and the testimony of the vocational expert and concluded Plaintiff was unable to perform any of his past relevant work. (Tr. 17). The ALJ relied on testimony of the vocational expert to find that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that Plaintiff could perform, such as dowel inspector, egg processor, and patcher. (Tr. 17-18).

## V.    DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ erred at Step Three by finding that Plaintiff's condition did not meet or equal Listing 1.04A; (2) that the ALJ

did not consider all of the required factors for evaluating the credibility of Plaintiff's subjective complaints; and (3) that a finding of disability is warranted because the unskilled sedentary occupational base is significantly eroded.

## A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  The ALJ's Step Three Finding is Supported by Substantial Evidence.

Plaintiff's first argument is that the ALJ erred by finding that Plaintiff's condition did not meet or equal one of the listed impairments, particularly Listing 1.04A. The Court disagrees.

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990)); *accord Jones v. Astrue*, No. 4:08CV01472FRB, 2010 WL 883658, at *8 (E.D. Mo. Mar. 5, 2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson*, 390 F.3d at 1070 (citing *Zebley*, 493 U.S. at 530). "Medical equivalence must be based on medical findings." *Id.* (quoting 20 C.F.R. § 416.926(b)(2003)).

Plaintiff argues that his impairments meet or equal Listing 1.04A. The preamble of Listing 1.04A requires a disorder of the spine resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Part 404, Subpart P, Appendix 1. Paragraph A lists the additional requirements:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.*

The ALJ's finding that Plaintiff did not meet his burden of showing that he meets or equals all of these criteria is supported by the record. As Defendant points out, even assuming that Plaintiff meets some of the criteria, he cannot show "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." To the contrary, Dr. Krishnan's notes from Plaintiff's visits after the alleged onset date indicate that Plaintiff denied muscle weakness (Tr. 223, 228, 301, 338, 342, 345, 349, 353) and that on examination, Plaintiff had no atrophy and had normal reflexes and sensation. (Tr. 224, 229, 302, 338, 342, 346, 349-50, 353). In addition, nonexamining state agency physician Dr. Ditmore considered Listing 1.04A, but did not find that Plaintiff met or equaled that listing. (Tr. 50-51).

Significantly, in his brief, Plaintiff does not cite any evidence demonstrating that he meets or equals the criteria in Listing 1.04A. Based on the evidence discussed above, and the absence of medical evidence showing that Plaintiff did meet or equal this listing, the Court finds that the ALJ's Step Three determination is supported by substantial evidence.

### C. The ALJ Conducted a Proper Credibility Analysis, Supported by Substantial Evidence

Plaintiff's second argument is that the ALJ failed to consider all of the relevant factors for evaluating subjective complaints.[2] When evaluating the credibility of a plaintiff's subjective complaints, the ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints." *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). However, the ALJ need not explicitly discuss each factor. *Id.* (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). It is sufficient if the ALJ "'acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Id.* The ALJ may not discount allegations of disabling pain solely because they are not fully supported by the medical evidence, but such allegations may be found

---

[2] Plaintiff does not set forth any specific deficiencies in the ALJ's credibility analysis; his argument consists entirely of a list of the relevant factors and a statement that the ALJ failed to consider them all.

not credible if they are inconsistent with the record as a whole. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

After review of the record, the Court finds that the ALJ conducted a proper credibility analysis. The ALJ set out the relevant credibility factors in his opinion and considered and discussed several in detail. (Tr. 14-16). First, the ALJ reasonably found that Plaintiff "described activities of daily living that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (Tr. 15). Specifically, the ALJ noted that Plaintiff helps with loading the dishwasher and doing laundry; helps his son get ready for school and walks him to his bus stop, a distance of 100 yards; can walk for 20 minutes before needing to rest; goes shopping once a month for about 45 minutes; and occasionally rides a bicycle. (Tr. 15).

The Eighth Circuit has recognized that its cases "send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009); *compare, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.") *with Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) ("[T]his court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.") (quotation marks omitted). However, Eighth Circuit cases generally suggest that it is proper for the ALJ to consider such daily activities in conjunction with other factors affecting the credibility of a Plaintiff's complaints. *See*, *e.g., Halverson v. Astrue*, 600 F.3d 922, 932-33 (8th Cir. 2010) (holding that the ALJ properly considered daily activities in conjunction with other inconsistencies in the record in assessing the credibility of the plaintiff's complaints); *Wagner v.*

*Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible). Here, the record indicates that the ALJ properly considered Plaintiff's daily activities in conjunction with other factors in the record in assessing the credibility of Plaintiff's complaints.

Second, the ALJ reasonably found that Plaintiff's subjective complaints were "out of proportion to the objective medical evidence." (Tr. 15). The ALJ correctly noted that physical examinations frequently showed that Plaintiff had normal gait; was able to heel and toe walk; had normal or nearly normal reflexes and sensation; and had intact coordination, and he found those normal findings undermined Plaintiff's claim that he could not perform even a limited range of sedentary work. (Tr. 15, 224, 229, 302, 353, 342-43, 338, 346, 349-50). Although the ALJ may not discount a claimant's subjective complaints solely based on a lack of objective medical evidence, it is proper for the ALJ to consider unremarkable or mild objective findings as a factor in the credibility analysis. *See Halverson*, 600 F.3d at 931-32 ("Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence."); *Goff*, 421 F.3d at 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints). It was reasonable for the ALJ to consider these findings in determining that Plaintiff's complaints were not fully credible.

Third, the ALJ reasonably considered the absence of functional restrictions from Plaintiff's physicians. (Tr. 15-16). As the ALJ noted, although Plaintiff's treating physician stated in a conclusory manner that Plaintiff's pain was "disabling," he did not set forth any

specific functional limitations related to Plaintiff's pain or impairments. (Tr. 16). This was a proper consideration. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (noting that the fact that no doctor had placed limitations on the plaintiff was a proper consideration in the ALJ's credibility analysis); *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (upholding ALJ's credibility analysis where the ALJ paid particular attention to the fact that the plaintiff's physician had not imposed work-related restrictions); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) ("[N]o functional restrictions were placed on Hensley's activities, a fact that . . . is inconsistent with a claim of disability.").

Fourth, the ALJ reasonably considered his own personal observations at the hearing, noting that Plaintiff was able to participate in the hearing fully, including responding to questions appropriately, without being distracted or demonstrating any overt pain behavior. (Tr. 15). The Eighth Circuit has held that it is "completely proper" for an ALJ to consider his own personal observations of a claimant during a hearing in making a credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001). *See also Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) ("While the ALJ's observations cannot be the sole basis of his decision, it is not an error to include his observations as one of several factors.").

Fifth, the ALJ reasonably considered the fact that Plaintiff received unemployment benefits after his alleged onset date. The Eighth Circuit has held that although it is not conclusive, applying for unemployment benefits adversely affects the credibility of complaints of disabling impairments, "because an unemployment applicant 'must hold himself out as available, willing and able to work.'" *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991)). Thus, the ALJ properly considered this along with other factors in the credibility analysis.

In sum, the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Plaintiff's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.") (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

### D. The ALJ's RFC Finding and Step Five Finding Are Supported by Substantial Evidence

Plaintiff's final contention is that a finding of disability is warranted because Plaintiff has had a substantial loss of ability to meet the demands of basic work-related activities on a sustained basis and the unskilled sedentary occupational base is significantly eroded. Plaintiff provides no additional specific arguments regarding this contention. The Court will interpret this section of Plaintiff's brief as a general challenge to the ALJ's RFC finding and/or to the ALJ's finding at Step Five that there were jobs existing in the national economy that Plaintiff could perform.

After review of the record, the Court finds that the RFC determination is supported by substantial evidence. A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Here, the ALJ determined that Plaintiff was capable of performing sedentary work, with some additional limitations such as a sit/stand option and a limitation to simple work. (Tr. 14).

That determination was supported by substantial evidence in the record, including the opinion of nonexamining state agency physician Dr. Ditmore, who reviewed Plaintiff's records and determined that he could perform work at the light exertional level with a limitation to occasionally climbing and stooping;[3] the largely normal examination findings discussed above; and Plaintiff's own accounts of his daily activities.

In addition, the ALJ's determination at Step Five that there were other jobs that existed in the national economy that Plaintiff could perform was supported by substantial evidence. At Step Five, the Commissioner bears the burden of proving that there are a significant number of jobs available in the national economy that the claimant can perform. *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); 20 C.F.R. § 404.1560(c). Here, in finding that this burden had been met, the ALJ relied on the testimony of a vocational expert. (Tr. 18). At the hearing, the ALJ described to the vocational expert a hypothetical individual who had all the limitations in Plaintiff's RFC. (Tr. 44-45). The vocational expert testified that a person of Plaintiff's age and education level with those limitations could perform representative jobs such as dowel inspector in the woodworking industry (*Dictionary of Occupational Titles* No. 669.687-014, 430 jobs in Missouri and 16,500 jobs nationally); egg processor in the pharmaceutical industry (*Dictionary of Occupational Titles.* No. 559.687-034, 620 jobs in Missouri and 27,350 jobs nationally); and patcher in the household appliances industry (*Dictionary of Occupational Titles* No. 723.687-010, 1,025 jobs in Missouri and 41,625 jobs nationally). (Tr. 44-45). Testimony from a vocational expert based on a properly-phrased hypothetical that includes all of Plaintiff's limitations constitutes substantial evidence at Step Five. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

---

[3] The ALJ noted that he found the evidence of record supported more limitations that were described by Dr. Ditmore. (Tr. 16).

Plaintiff appears to suggest that because the RFC was for less than a full range of sedentary work, he should have been found to be disabled. However, as Social Security Ruling 96-9p states, "the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability. There may be a number of occupations from the approximately 200 occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded." SSR 96-9p, 1996 WL 374185, at *4 (July 2, 1996). Here, the ALJ properly consulted a vocational expert, who identified three such jobs that Plaintiff could perform. Thus, the Court finds that the Step Five determination was supported by substantial evidence.

## VI.    CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.


SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of July, 2017.